IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.                                      ) | Case No. 4:16CR00007 |
| ) | |
| TORRICK MIKEL MATTOX         ) | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

Torrick Mikel Mattox comes before the Court seeking compassionate release from the remainder of his term of imprisonment. Although Mr. Mattox does not allege any extraordinary and compelling reason in his pro se motion, the United States notes from his medical records that he is obese. In the interests of justice, the government brings this fact to the notice of the Court to allow full consideration of the facts of this case. Given that Mr. Mattox is obese, he can present an extraordinary and compelling circumstance, which then allows the Court to consider the § 3553(a) factors in deciding Mr. Mattox's case. Ultimately, and given full consideration of the relevant facts, the government concludes that Mr. Mattox's obesity does not overcome the § 3553(a) factors and otherwise call for his release. No modification of his sentence is necessary.

Mr. Mattox filed his request for compassionate release via a letter to the Court that was docketed on November 24, 2020. The Court appointed the Federal Public Defender to consider and perhaps supplement Mr. Mattox's claims. On February 2, 2021, the Federal Public Defender declined to supplement Mr. Mattox's *pro se* motion, thus the United States now responds directly to Mr. Mattox's motion.

Again, review of Mr. Mattox's prison records suggests that Mr. Mattox is obese, which, the Government must admit, is an extraordinary and compelling circumstances. But nothing suggests that he is unable to function or engage in self-care in a prison environment. As such, his motion should be denied.

## BACKGROUND

Mattox was significantly involved in the distribution of cocaine in 2017. Mattox operated as the "doorman" in a drug conspiracy, but also supplied cocaine and synthetic marijuana to approximately forty customers, mostly "young girls." Mattox was indicted for one-count of conspiracy to distribute cocaine. ECF 399. He pleaded guilty on January 24, 2017 and was sentenced on May 16, 2017. ECF 399. The Court imposed a sentence of 84 months. *Id.*

There is nothing in the record, or otherwise, to suggest that Mattox has actually requested an administrative reduction in sentence from the Warden. If true, the lack of an administrative request would make the instant filing premature, and subject this filing to dismissal without prejudice.

Mattox's current projected release date with good conduct time is December 7, 2021.

## BOP RESPONSE TO COVID-19 OUTBREAK

Mattox is concerned that the Bureau of Prisons will not be able to again protect his health and wellbeing during the COVID pandemic, and so he should be released. However, BOP has taken aggressive steps to protect inmates' health and limit the spread of COVID-19 in its facilities. BOP COVID-19 Action Plan (March 13, 2020), www.bop.gov/resources/news/20200313_covid-19.jsp;  BOP COVID-19 Coronavirus, www.bop.gov/coronavirus/index.jsp  (updated regularly). BOP modified operations by regularly screening inmates and staff, suspending social visits and tours, limiting in-person legal visits, limiting inmate movement, and maximizing social distancing.

https://www.bop.gov/coronavirus/covid19_status.jsp. As BOP progresses in its Action Plan, it has restored some aspects of normal operations.

BOP is devoting all available resources to transfer inmates to home confinement in appropriate circumstances when those inmates are particularly vulnerable to adverse outcomes from COVID-19 under the Centers for Disease Control and Prevention risk factors. Mem. from Attorney General to Director of BOP (Mar. 26, 2020), *available at* https://dojnet.doj.gov/usao/eousa/ole/tables/misc/aghome.pdf; Mem. from Attorney General to BOP Dir. (Apr. 3, 2020), *available at* https://dojnet.doj.gov/usao/eousa/ole/tables/misc/agcovid2.pdf. In determining which inmates would be appropriate candidates for home confinement, BOP must assess several discretionary factors:

- The age and vulnerability of the inmate to COVID-10, in accordance with the CDC guidelines;

- The security level of the facility currently holding the inmate, with priority given to inmates residing in low and minimum security facilities;

- The inmate's conduct in prison, with inmates who have engaged in violent or gang-related activity in prison or who have incurred a BOP violation within the last year not receiving priority treatment;

- The inmate's score under PATTERN, with inmates who have anything above a minimum score not receiving priority treatment;

- Whether the inmate has a demonstrated and verifiable re-entry plan that will prevent recidivism and maximize public safety, including verification the conditions under which the inmate would be confined upon release would present a lower risk of contracting COVID-19 than the inmate would face in his or her BOP facility;

- The inmate's crime of conviction, and assessment of the danger posed by the inmate to the community; some offenses, such as sex offenses, render an inmate ineligible for home detention.

Mem. from Attorney General to Director of BOP (Mar. 26, 2020) at 1-2, *available at* https://dojnet.doj.gov/usao/eousa/ole/tables/misc/aghome.pdf. As of this writing, BOP has

transferred 21,532 inmates to home confinement. https://www.bop.gov/coronavirus/index.jsp (last visited February 10, 2021).

BOP has begun administering vaccines to inmates. Information on BOP's vaccination efforts will soon be available on bop.gov. Based on current available data from the CDC, BOP has distributed 43,544 doses of the vaccine. COVID-19 Vaccinations in the United States, Ctrs. for Disease Control and Prevention, https://covid.cdc.gov/covid-data-tracker/#vaccinations (last updated Feb. 10, 2021).

## ARGUMENT

The compassionate release statute, as amended by the First Step Act on December 21, 2018, provides:

> [The] court may not modify a term of imprisonment once it has been imposed except . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds . . . extraordinary and compelling reasons warrant such a reduction [and] such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

In general, the Defendant has the burden to show the "rare" and "extraordinary" circumstances meeting the test for compassionate release. *See United States v. Brewington*, 2019 WL 3317972, at *2 (W.D. Va. July 24, 2019) (Jones, J.); *United States v. Willis*, 2019 WL 2403192, at *3 (D.N.M. June 7, 2019); *United States v. Gutierrez*, 2019 WL1472320, at *2 (D.N.M. Apr. 3, 2019). Although the Fourth Circuit recently held the policy statement found in U.S.S.G. § 1B1.13 does not apply to compassionate release motions brought by inmates under 18 U.S.C. § 3582(c)(1)(A)(i), the policy statement remains "helpful guidance even when motions are filed by defendants." *United States v. McCoy*, 981 F.3d 271, 282 n.7 (4th Cir. 2020); *see also*

*United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) (explaining that § 1B1.13 remains useful in framing a court's inquiry as to what constitutes "extraordinary and compelling reasons"). "[A] judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused. In this way the Commission's analysis can guide discretion without being conclusive." *Id*. (citing *Gall v. United States*, 552 U.S. 38, 49–50 (2007); *Kimbrough v. United States*, 552 U.S. 85 (2007)). Thus, although *McCoy* broadened district courts' discretion under § 3582(c)(1)(A), it nonetheless appeared to envision a system whereby courts remain confined within a traditional discretionary framework.

    1.    **The Government Contests Exhaustion of Administrative Remedies.**

Mattox does not appear to have submitted any administrative request to the Warden for reduction of sentence. As such, he has not exhausted his administrative remedies. The exhaustion requirement is "mandatory." *United States v. Carr*, 2020 WL 2847633 at *4 (W.D. Va. June 2, 2020) (Jones, J.). It must be enforced if a party "properly raise[s]" it. *Eberhart v. United States*, 546 U.S. 12, 19 (2005) (holding Fed. R. Crim. P. 33 is non-jurisdictional but a mandatory claim-processing rule); *see also Hamer v. Neighb'd Hous. Servs. of Chi.*, 138 S. Ct. 13, 17 (2017) (when "properly invoked," mandatory claim-processing rules "must be enforced"). Failure to exhaust is a "glaring roadblock foreclosing compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *United States v. Alam*, No 20-1298, at 7 (6th Cir. June 2, 2020). The result of failure to exhaust would be dismissal without prejudice, and if the Court finds that there has been a failure to exhaust, it need not consider the following arguments on the merits.

    2.    **Mattox's obesity presents an "extraordinary and compelling" reason under application note 1(a) to the Sentencing Guidelines policy statement.**

The CDC has identified the following underlying medical conditions as placing individuals at higher risk for severe illness if they contract COVID-19: (1) cancer; (2) chronic kidney disease;

(3) COPD; (4) down syndrome; (5) heart conditions; (6) immunocompromised state; (7) obesity (body mass index (BMI) of 30 to 40; (8) severe obesity (BMI of 40 or higher); (9) pregnancy; (10) sickle cell disease; (11) smoking; and (12) type 2 diabetes. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited 1/7/21).

The CDC has added a separate list of conditions for which there are insufficient data to conclude anything more than that these conditions <u>might</u> increase the risk of severe illness from COVID-19: Asthma (moderate-to-severe); Cerebrovascular disease (affects blood vessels and blood supply to the brain); Cystic fibrosis; Hypertension or high blood pressure; Immunocompromised state (weakened immune system) from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines; Neurologic conditions, such as dementia; Liver disease; Overweight (BMI over 25 but under 30); Pulmonary fibrosis (having damaged or scarred lung tissues); Thalassemia (a type of blood disorder); Type 1 diabetes mellitus. *Id.* A condition on the CDC's list of conditions that *might* increase risk does not by itself qualify as an extraordinary and compelling reason that would permit consideration for compassionate release. The full collection of circumstances must always be individually assessed, and the defendant has the burden to show the "rare" and "extraordinary" circumstances meeting the test for compassionate release. *See United States v. Brewington*, 2019 WL 3317972, at *2 (W.D. Va. July 24, 2019) (Jones, J.);[1] *United States v. Willis*, 2019 WL 2403192, at *3 (D.N.M. June 7, 2019); *United States v. Gutierrez*, 2019 WL1472320, at *2 (D.N.M. Apr. 3, 2019).

---

[1] Internal quotation marks and citations omitted throughout.

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act on December 21, 2018, provides, in part, that the "court may not modify a term of imprisonment once it has been imposed except that . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." These policy statements provide medical conditions can, alone, prove sufficiently extraordinary and compelling to justify a sentence modification. U.S.S.G. § 1B1.13, application note 1(A)-(B), (D).

Mattox requests early release based upon his general concern for his own health, specifically sleep apnea. Mattox's medical records indicate that he suffers from obesity, with a BMI of 36.3. Obesity is a CDC-recognized factor. As for Mattox's general concerns, they are not CDC approved, and, merely having "health issues" does not equate to an extraordinary and compelling circumstance.

Obesity is reflected on the CDC list cited above, but his other complaints are not ones that the CDC has indicated create a greater risk of harm from COVID-19. Mattox's medical records reflect that as of February 28, 2020, he was 72 inches tall, with a weight of 268 pounds. This translates to a BMI of 36.3, which is within the range of what is considered obese (BMI over 30). Mattox has not made any assertion that his conditions render him incapable of self-care in a BOP facility, but the Government recognizes that Mattox's obesity, in light of the COVID-19 pandemic, has been identified as an extraordinary and compelling reason for release.

But the analysis does not end with a simple consideration of Mattox's medical situation; we must also examine the § 3553(a) factors. They establish that Mattox should not be released.

    3.    **The § 3553(a) Factors Weigh Strongly Against a Sentence Reduction.**

The compassionate release statue under which Mattox moves for release, 18 U.S.C. § 3582(c)(1)(A), requires the Court to consider the factors set forth in § 3553(a). Those factors include: the nature and circumstances of the offense and the history and characteristics of the Defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a).

These § 3553(a) factors do not support Mattox's release. Mattox was directly and personally involved in the distribution of large amounts of cocaine. This is dangerous conduct, which requires just punishment. BOP classified Mattox as having a medium security classification. All of this compels his continued incarceration on grounds of incapacitation and deterrence.

Importantly, Mr. Mattox has not stayed out of trouble during his time in BOP custody. In October 2020, Mr. Mattox escaped incarceration and was a fugitive for a total of three days. It is clear from this rather recent incident that Mr. Mattox does not respect the rule of law, nor does it give the government much confidence that Mr. Mattox would abide by the terms of home incarceration. When given the chance to reintegrate into the community, Mr. Mattox threw that chance away. He gives us no cause to believe that giving him another chance would produce a better result.

We can infer from his actions and from his history that Mr. Mattox is a likely recidivist. Regardless of how we arrive at this conclusion, protection of the community requires that he serve

his full term of incarceration. The need to encourage respect for the law requires that he serve his full term of incarceration. The need to deter requires that he serve his full term of incarceration.

Releasing him before he has completed his sentence would be to cause the commandments of § 3553(a) to be superseded by the fact that Mattox is moderately obese – a condition for which he not only bears some responsibility, but one that he can also positively impact on his own, at any time, if he so chooses. It is actually possible to lose weight, even if you are in federal prison. The government is sure that the medical staff supporting Mr. Mattox would be happy to put him on a program that would help him do just that. It may be that obesity is a factor that makes COVID more dangerous, but nowhere is it written that a Defendant can't take responsibility for his own health by losing weight, thereby doing something on his own to improve his own situation. Indeed, if the situation is as dire as Mr. Mattox makes it out to be, he should be working hard each and every day to decrease his BMI.

Viewing his case holistically, and with an individualized consideration of Mr. Mattox, there are limited reasons to grant Mr. Mattox early release, but solid reasons why his request should be denied.

## CONCLUSION

Viewing the record as a whole, while Mr. Mattox's obesity acts as an extraordinary and compelling circumstance, it does not outweigh the problems posed by his escape four months ago and his moderate security level. Therefore, consideration of his § 3553(a) factors outweigh his reasons for release. For the foregoing reasons, the Government respectfully requests the Court deny the motion.

Respectfully submitted,

DANIEL P. BUBAR
Acting United States Attorney

Date:  February 11, 2021             */s/ Mary Margaret Cleary*
                                                        Mary Margaret Cleary
                                                        Assistant United States Attorney
                                                        Virginia State Bar No. 92882
                                                        P. O. Box 1709
                                                        Roanoke, VA  24008-1709
                                                        Telephone:  (540) 857-2250
                                                        Facsimile:  (540) 857-2614
                                                        E-mail:  Maggie.Cleary@usdoj.gov

CERTIFICATE OF SERVICE

    I hereby certify that on February 11, 2021, I caused a true copy of the foregoing Government's Response in Opposition to Defendant's Motion for Compassionate Release to be electronically filed with the Clerk of the Court using the CM/ECF system, which will provide electronic notice to all counsel of record.

                                                        */s/ Mary Margaret Cleary*
                                                        Mary Margaret Cleary
                                                        Assistant United States Attorney